23-2379. Good morning, your honors. May it please the court, my name is Caitlin DeWitt with Social Justice Collaborative and I represent the petitioners in this matter, Mr. Hugo Martinez Solis and Ms. Diana Lopez-Rosinos, as well as their two children. I would like to reserve four minutes for rebuttal. Hugo and Diana both have independent claims to asylum which were erroneously denied by the agency. However, today I'd like to focus on the errors committed in denying Diana's asylum application specifically. The agency willfully ignored substantial evidence that Diana suffered past persecution by cherry-picking the record to say an indigenous girl growing up in a non-indigenous home didn't suffer for it. When Diana was 8 years old, a teenager tried to rape her and when she was 10 years old, a classmate tried to drown her because she has a darker skin color. Because substantial evidence does exist in this record that would compel any reasonable person to find Diana has met her burden, this decision must be reversed. And how did the IJ and BIA characterize that assault? Because I thought they characterized it differently than what actually occurred. Your honor, are you referring to the drowning or the attempted rape? The attempted rape. The attempted rape, they refer to it as a crime of opportunity, which I would ask where in the law does it say a crime of opportunity cannot be predicated on a protected grounds for the asylum statute? Well, the crime of opportunity is the same where she, I believe, indicated that the perpetrator responded something to the effect of, I thought you were an Indian or, I forgot the language. Exactly, so there in lies the nexus. So the board did find that attempted rape is, in fact, persecution through Cowrie v. Wilkinson. However, they don't find nexus. They say that her race or membership in a particular social group, Guatemalan women or girls, was not even in part a motivation of her attacker. But as you just said, Judge, in her testimony, Deanna states, he said that he thought that I was just an Indian, a bitch, that those were his direct words. He says, or he told Deanna's mother that he thought she was a domestic worker, that she didn't belong in that house. Well, let me stop you there. This notion of he thought was a domestic worker, why is that relevant in the context of the social class? Yes, Judge, typically, or stereotypically rather, indigenous peoples in Guatemala are seen as a lower class. They're seen as the help, as domestic workers. He saw her as not belonging to that house, and it really doesn't matter because he tried to rape her because he saw her as less of a person, more of an object, because of her race, and he said that out loud. You know, it was not his perception of her economic status or because he has an animus against domestic workers, it was because he associates those with an indigenous race. Additionally, to the drowning. Can I ask, if we agree with you about this asylum argument, how do you think it relates to Kat? Would we also need to remand on Kat, or does this speak to whether this same argument relates to Kat as well as asylum? I don't know that this particular argument with Deanna and the harm she suffered as a child relates to the Kat claim so much. I think this is much more directed to her past persecution that she suffered, which the government has not rebutted. Turning again to the attempted drowning, that is something that the board completely left out of its analysis. I mean, the IJ does discuss in her recitation of the facts that the drowning occurred, but in her actual analysis, her opinion, she doesn't mention the drowning at all, so there's no cumulative review there. But go back to the drowning, I guess, the attempted drowning. It wasn't one of these just mean situations where someone just throws someone into a pool after they know that they're can't swim. It's not just that. There was more here. Tell me why there was more, or if there was more. In this situation, again, the girl who pushed Deanna into the pool who knew that she couldn't swim, as she pushed her, she said, this is for you to die, Indian. That is clear racial animus that this little girl, regardless of her age, incited and was intending to cause bodily harm. I think it's also worth mentioning that Deanna was only 10 years old when the drowning happened, so if we view that from the perspective of a 10-year-old, as we must per Hernandez-Ortiz versus Gonzalez, the degree of trauma is compounded the same for the attempted rape. And we never get to nexus in the decisions because they find that this is a past persecution, rather that this is a harm rising level of persecution. However, it clearly is under Lopez v. Ashcroft, however you look at attempted murder, is persecution. We also argue that Deanna was targeted with the attempted rape, was targeted based on her membership with a particular social group of Guatemalan women or girls. Both Perdomo and Cower guide us here. Perdomo acknowledges that a PSG of Guatemalan women can be a particular social group, and then Cower speaks largely to the nexus between the PSG and the harm that Deanna suffered. It contains a lot of language about rape and attempted rape as a gender-based harm, inherently gender-based harm. Was there also a mischaracterization of the social group, in this case, by the board? In other words, I believe it was, they might have defined it as, and I might not have this entirely right, but like Guatemalan women that are raised by Spanish-speaking mothers or something like that. They defined it in this really sort of narrow, not how necessarily it was presented by the petitioner. Yes, Your Honor. I think you're referring to my next point, which was the pattern and practice doctrine analysis, which erroneously was included in the IJ's analysis on past persecution. But as we look to the regulation, this is a forward-looking, well-founded fear provision. But, you know, we have to, what needs to be sussed out here is how similarly situated do we have to show, or to the petitioner, are we defining the group? You know, the statute, or the regulation, only says that there must be a pattern and practice of persecution of the group that is similarly situated to the applicant on account of those five protected grounds, the first of which is race. And so we argue that there is the pattern and practice of persecution against indigenous Mayans in Guatemala, as well as women. So can I ask, it seems like the IJ did something odd with this and did narrow the group, but on page, so AR5, page three of the BIA opinion, it isn't clear to me that the BIA made the same error. It talks about indigenous Mayan people in Guatemala, and says that there's not sufficiently systematic, sorry, I'm not reading the full sentence, but it seems like it looks at that group and says there's not sufficiently systematic persecution for a pattern and practice. And I'm not sure that's wrong, or making the same error you're talking about. I obviously would disagree with the board. I believe that there is a pattern and practice of persecution against indigenous Guatemalans. However, my main takeaway from the BIA decision in that section is that they say that she does not point to specific factual legal error in the the reducing the similarly situated group argument. But I think, I think Judge Freeland's point is that maybe the IJ made that mistake, but perhaps the BIA did not. I mean, I, but I do, I mean, I think it is a fair point that when the BIA says that she raises no factual or legal error, your point is that's wrong, because she did raise a legal error, because they, she raises the point that they narrowed the group. That's correct. But then it seems like they, so that might be wrong, but what do we do with, even if that's wrong, because she did raise a legal error, they go on to analyze it in what seems sort of like the correct way. So I'm not sure what to do with that. I would also say, Your Honor, it's very conclusory. There's no reference to any, any of our country conditions or any arguments mentioned. Well, I guess, so I guess that question is then, do you think you have sufficient evidence of a pattern and practice claim for this Indigenous group? I mean, is it bad enough for this group that just being in that group is enough for getting asylum itself? Of Indigenous Guatemalans? I do believe so, Your Honor, but I would also point to- And what is the best, what is the best record evidence then for that? What, like, which country can, what can you point us to that shows that basically any, anyone who's Mayanmon could come here and get asylum because it's so bad for that group? I don't know that I could specifically cite to you a country condition, but I would cite Mendoza Pablo, a viewholder, which explains just how incredibly tragic life has been for Indigenous Guatemalans. I mean, that may be, it may be that anyone could, but that, that would be that concept, right? That anyone in that group could come here because it's so bad for them. That's the, that's the pattern and practice concept. Correct. Correct. I mean, but I primarily take issue that we are, we're saying that just because she doesn't wear the typical dress because she doesn't speak the language because she's- Yeah, the IJ said some odd things for sure. I just don't know that the BIA- I think that's being charitable. I don't know if odd would be the word I would use. The IJ said some wrong things, I'll say, but I'm not sure the BIA did also. But, Your Honor, I would, I would just go back to the past persecution that she suffered. She, she suffered a, for lack of a better word, pattern and practice of wrong. Well, but I think that's your, your individual, I don't, that's a different claim. And I think you're making that claim and you have made those arguments. I just am trying to figure out if you have this separate forward-looking only pattern or practice claim that we should be worried about or not. I believe so, Your Honor. I, I also just feel that the, the substantial evidence in the record would compel a reversal is, is the stronger claim, but there is legal error on the side of the past, or pattern of persecution doctrine analysis. If there are no further questions, I'll reserve the remainder of my time. Thank you. Good morning, Your Honors. May it please the Court. My name is Taryn Arbeiter on behalf of Attorney General, U.S., U.S. Attorney General Merrick Garland. This Court should deny the petition for review in this matter. Neither of the lead petitioners have shown that they suffered past persecution on a protected ground, nor have they established that they fear. Let me stop you there. In your brief, you referred to the attempted rape as an attempted molestation and an, an unsuccessful attempt to touch a girl inappropriately, but I want to read to you some of their testimony. The boy stripped her of her clothes, touched her breast and wanted to take off her blouse. He pulled her skirt, unzipped her pants, and tried to reach into her intimate parts before she kicked him away and got free. That the I.J. referred to these incidents as discrimination and teasing. If these incidents occurred in the United States, would we call them an attempted rape or would we call them discrimination and teasing? Thank you, Your Honor. So the claim did evolve a bit. As you noted, there were some different descriptions of what happened. In her statement on page 530 of the record, she said the boy was trying to touch my breast and wanted to take off my blouse. Later in her testimony, she said he pushed her to the ground and then she bit his hand and kicked him in his intimate parts. And that was the end of the encounter. Then on cross-examination is when she said that he stripped her of her clothes and saw her intimate parts. So counsel, she elaborated on what was being said and she was found to be credible, correct? She was found to be credible. I will she did go back on that again when it was questioned by the I.J. She said she did have on her blouse and that he pulled it up. So in all these different characterizations of what happened, ultimately, it was an attempted molestation by this boy who did... He said he wanted to make her hers or something to that effect. What does that mean other than sexually assaulting her and raping her? Does that mean something different? Making her hers? Your Honor, that statement, I will agree, does show intent in that case, but ultimately... Does show intent for what? I do agree. It was an attempted... That would suggest as an attempted rape. So we should treat it as an attempted rape and not as the I.J. referred to it as discrimination and teasing, shouldn't we? I do not agree that this is merely discrimination and teasing. I completely agree with you there. What I will say, though, is that this is distinguishable from the attempted rape cases that this court has found to constitute past persecution. For example, in Carr, the woman was gang raped by a number of individuals in broad daylight. And the overall situations, the facts of this case just simply do not amount to past persecution. A boy tried to target her in her own home where he believed that she was vulnerable for some... Because she was a child and for a few listed of various reasons, domestic worker, potentially the fact that she was indigenous, and he attempted to touch her breasts. And that's as far as the incident went. And in this situation, Your Honor, it just doesn't rise to that level. The testimony was the mother came and said, why did you attempt to rape her? There's a lot of testimony of calling it an attempted rape. And I think that your effort to fight that seems to be attacking her credibility and the credibility of the testimony, which the agency said she was credible. So I'm not finding this very persuasive. I think it would be helpful if you would treat it as an attempted rape, at least from my perspective, and make your other arguments because it's not helpful. Your Honor, in that case, I will move on to Nexus then. And that is the other finding that we defended. Now, it is true that she said during her testimony that at some point he said that he thought she was indigenous. However, it is very clear from her testimony and her statement that this boy was interested in targeting a child that day and found her to be a vulnerable child within... For various reasons, determined that she was to his attacks. But it seems like the reason for that was that she was indigenous. I mean, the reason he chose her was because she was indigenous. So I'm having a really hard time understanding how there isn't a nexus to that racial group. The reason that he chose her was because she was in the house, happened to be at the wrong place at the wrong time. It was a crime of opportunity as the agency characterized this. I mean, that seems to be just ignoring the fact that he says that you're an Indian or maybe the drowning is you're an Indian. I can't remember the exact words, but he says something about you're not really her daughter because you don't look like her. And I thought she was indigenous. At some point, he said that he thought that she was, she worked for someone in the neighborhood, that it was not her house and that perhaps she was the daughter of an indigenous neighbor, as well as the fact that she might be a domestic worker. Where in fact, his mother was the one that was a domestic worker in that house. And I don't believe was indigenous as far as her testimony goes. He looked at her, he saw a child, and he noticed a variety of traits and assumed that she may be indigenous. He saw an indigenous child. He saw an indigenous child, but he... And I guess I want to delve in a little into that concept of being a worker, because that is an interesting concept and it's something that's sort of brushed away. And I'm not sure that either council sort of addressed it. What is the view or is there a specific view of folks who are domestic workers and are considered indigenous? That would have had to been developed in the country conditions evidence. And I don't have any that I'm aware of that petitioners pointed to, to show that most domestic workers are indigenous people. And in fact, in this case, the domestic worker was presumably a Ladino individual. So I don't think that that... Wait, I'm not sure what you're talking about when you say that. What domestic worker are you talking about? His mother did laundry at her mother's house. So that's why he was in the house at the same time. So his family was actually domestic worker for her family. And so in this case, he was interested in finding some vulnerable individual. He listed a number of factors, class, age, the fact that he lived there, that she was alone, that she was a child, that he thought she was indigenous. He didn't really care which factor made her vulnerable, just the fact that she was vulnerable. But so long as one of those factors is a protected group, why isn't that enough? Well, Your Honor, if you disagree with me on that, that he looked at the variety of factors, he didn't necessarily care which one made her vulnerable. I guess my question is different. If at least one of those factors is a protected group, why isn't that enough for us to indicate there's a nexus? The agency had to make a factual finding that the persecutor had a specific motive, that it was a motive even for withholding of removal. And the agency found that it was not a motive. It seems like it ignored the fact that he said this thing about her being indigenous. Well, it's possible that that was one reason. I mean, he presumed that she may be indigenous, but it's not clear that that particular factor was important to him more than any other factor that made her a vulnerable victim in that case. Are you also challenging the nexus on the pool, the drowning incident? No, Your Honor, we are not. However, I will say that with respect to this nexus issue, if the court doesn't buy that he didn't care which factors made her vulnerable, Riemann in this case would be futile because Ms. Lopez has never stated that she fears this individual in the future. This happened when she was eight years old. Well, if she could get, if she had past persecution, she would get a presumption of future persecution. Even with a presumption of future persecution, there's nothing in the record to the point where it would rebut the idea that she is still scared of this individual. It would be the government's burden to rebut it, so how would you rebut it? The fact that there is no evidence whatsoever in the record that she still fears this individual. I mean, she has not testified one bit that she has, she even knows who this person is, has ever seen him again. Has any fear of being raped by him. Counsel, I thought there was, there's evidence, and correct me if I'm wrong, in her declaration about her continuing and ongoing psychological sort of feelings about how the rape affected, or the attempted rape affected her. So this fear of this additional harm, not just by this individual, but perhaps by others. Well, Your Honor, that would be extremely speculative. She doesn't, she would have to show that she would have, you know, she has to show that she fears actual persecution. That means, you know, extreme mistreatment. There was an attempted murder and an attempted rape, both because she's Indigenous. Yes, but she has not- If she has that past persecution, then why wouldn't it be that she gets a presumption of future persecution that as an Indigenous person going back, there are going to be more things, I mean, there's two different people, there are going to be more things that happen to her. What's wrong with that claim? Well, she's not made that, these incidents occurred when she was eight years old and 10 years old, respectively. And now her claim today centers on this extortion that happened to her husband. I mean, you, okay, she might lose on that. So let's just put that aside for a moment. I'm asking about this. If she has a past persecution based on being Indigenous, she gets a presumption of future persecution. How is the government going to rebut and show that with the country conditions about other problems for Indigenous people, how are you going to rebut that future persecution that so much that we know so much that it can't even be remanded? Like, it's so clear. How are you going to do that? Well, Your Honor, you know, there's just, there's no, she would have, there would have to be some indication that she would fear this individual. I mean- I don't think it has to be this individual. What is your authority that says if there's past persecution by more than one person, you can't have a fear of future persecution from other people? Because of your protected- For the same basis of protected ground. Tell me a case that says that. Well, Your Honor, no, I don't, I don't think there's a case that says that, but I mean, I think that just the fact that her persecution occurred, I don't know, she's in her 30s now, you know, decades ago, and she hasn't had- Well, she's been here a while, right? How long has she been out of Guatemala? She, let's see, I have her entry date somewhere, but I'm not 100% sure off the top of my head. Um, I mean, I don't think she's been here, I believe she came in, must have been most likely since, hold on, 2021, I believe. So, since 2021, which was, you know, three years ago. However, this, this, uh- What is the relevance of the petitioner's response to the IJA when asked, what is it that you, there were, there were direct questions, I think, when she testified with respect to what she fears the most, or what is she afraid of, that I think was going to this question that, that Judge Friedland's asked, which is- Right. What would the government point to, to rebut the presumption of future persecution? Yes, you're right, Your Honor. When questioned about the, you know, this is in the context of the conversation about the gangs, and when asked if she feared anything else, she said no. And so, in that, in, that would be, that is correct, that would be evidence to rebut the presumption. It's very clear from the record that her sole fear at this moment is extortion from the gangs. And these unfortunate things happen to her. And, you know, the government is very sensitive to the fact that this is an extremely unfortunate situation, that she was, you know, bullied by kids in school and, you know, an attempted molestation by this, this boy working at her house. But throughout the testimony, she clearly only fears gang extortion. Can you point to where in the record you think that's so clear? Okay, so she was asked, you know, if she had feelings that she was discriminating Guatemala as an adult. She did say yes on page 132. And I did not print out the page in the record where she did say, but here I will, I think it's cited in our brief. What I'm looking at is on ER 65, which is page 10 of the IJ's decision. It says, when asked on cross-examination who respondent fears if she returns to Guatemala, she indicated that she fears return to Guatemala from the people who are dedicated to extorting people. If they do not give them money, they kill you. She does not fear anyone else. Money is the only thing that they are interested in. I'm not sure if that's your, I mean, that's what I'm looking at. I'm not sure that it. And I wish I had pointed out that specific page in the record. But yes, the IJ decision does summarize the testimony in that way. I think there's still a question about whether or not when weighed, you know, against the government's burden to rebut the presumption, whether that would be sufficient. I'm not sure why that wouldn't still require a remand for determination in the first instance. I'm not sure it's so clear that we could know. But it seems to me that there's at least direct statements from the petitioner that her fear of future persecution relates to financial extortion. Yes, Your Honor. I mean, throughout her testimony, that was the thrust. And in addition to that, I will point out that the immigration judge found that the government was unable or unwilling to prevent, you know, attempted molestation of children. But that is another ground that the agency has made clear how they would rule on remand. And there's just simply no evidence provided by the petitioner in the record that, you know, that the government is interested in prosecuting these things. It was never reported to the police. Nobody's arguing here that, you know, she was unprotected by the government as a child subject to this attempted molestation. And I see my time has expired. Thank you. Thank you both sides for your arguments. This case is submitted. No. I'm sorry. Oh, my goodness. I'm sorry. Please go ahead with your rebuttal. Thank you. Oh, my goodness. Sorry about that. Your Honor, with regards to this notion that this happened a really long time ago, as you stated, if it's past persecution, she enjoys a rebuttable presumption. But then it's on the government to make that argument, to provide country conditions that say it's safe for indigenous people now to make an argument to, I believe, the cross-examination. And this was just a few moments long. There was no closing statement. There was no brief. There were no country conditions. The government had its chance to rebut that presumption, and they didn't do that. And I don't see how a remand for them to look at that again would be at all helpful or fair in this case. Well, sorry. So the agency found when do you think the government should have tried to rebut it? Because the agency found that she didn't have past persecution. And then that's what I think you've been trying to challenge like both before the BIA and before us. You're saying, wait a second, she does have past persecution. So when when was the government supposed to do this? Certainly. Let me rephrase the Department of Homeland Security at the trial stage should have made that argument, and no argument was made. At the trial stage before the IJ, you're saying? Correct, correct. Like in the alternative, assuming that, like, or when do you think that should have happened? It should have happened prior to the judge giving her oral decision that said there was no past persecution. We gave an oral argument that laid out the facts that said there was past persecution for the same reasons I'm telling you today. And the government made no response to not have any sort of argument against that. They had a chance to do that. But why wouldn't they be allowed to on remand to make that to state that position clearly? Because they had their chance to do that at the trial stage. That's the fact finding has been completed in this case. Furthermore, as far as that would be an argument about. I mean, they wouldn't. The fact finding has been complete. I'm not sure what that means. They could make an argument based on the testimony that was already given, right? They can, Your Honor, but I just argue that that should have been done at the trial stage. Furthermore, as to whether the government was able and willing, again, that is and willing, a conjunction. There, I would like to point to the IJ decision where she points out that this is AR-66. She indicated that she never reported the attempted rape. While reporting is not required, especially given her young age at the time of the incident, it is a factor for the Court to consider in its analysis. The judge is correct. It's not a requirement, and she was 8 years old. I just want to reiterate that. And further, there is country conditions evidence that shows that these are, even rape laws or women's shelters, have been shown as not effective. Finally, to the government's point, again, they repeated that she was bullied, and that's unfortunate. I want to reiterate part of Deanna's declaration, which states she wasn't just bullied. She was insulted, humiliated, and isolated at a very young age. On AR-532, I believe it says, I continue to suffer bullying from my classmates at school who insulted me practically every day for being indigenous, calling me Indian. You should go back to your village. You do not belong here, and other expletives. Your Honors, my time has expired, but I would ask that you reverse this decision and grant this family refuge. Thank you. Thank you very much. I'm really sorry about my mistake earlier about rebuttal, but thank you for giving the rebuttal. Thank you both sides for the helpful arguments. This case is submitted, and we are adjourned.
judges: FRIEDLAND, MENDOZA, DESAI